UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANASTASIA LANG, ROBERT LANG,
and SUSAN LANG,

       Plaintiffs,                     Case No. 1:18-cv-284

v.                                        Hon. Paul L. Maloney

OAKRIDGE PUBLIC SCHOOLS,
OAKRIDGE PUBLIC SCHOOLS BOARD
OF EDUCATION, JASON McVOY,
and KURT KIESGEN,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is now before the Court on a motion for summary judgment and to dismiss filed by defendants (ECF No. 17).

    **I.**    **Plaintiffs' complaint**

    **A.**    **The parties**

The plaintiffs in this case are Robert Lang, Susan Lang, and Anastasia Lang. Plaintiffs Robert Lang and Susan Lang (sometimes referred to as the "Parents") are the father and mother of Anastasia Lang (sometimes referred to as the "Student"). Compl. (ECF No. 1, PageID.1). The defendants are the Oakridge Public Schools (sometimes referred to as the "District"), the Oakridge Public Schools Board of Education, James McVoy (an administrator of the District's education programs and services), and Kurt Kiesgen (a teacher and athletic coach at the District). Compl. at PageID.4-5.

1

### B. Plaintiffs' allegations

Plaintiff Anastasia Lang was 19 years old when the complaint was filed. *Id.* at PageID.3. She "has been diagnosed with an autism spectrum disorder and other mental and emotional health issues which significantly limit her ability to communicate, learn, concentrate and self-advocate, and/or is regarded as having such impairments." *Id*. While Anastasia attend school in the District, plaintiffs engaged in "protected activity," seeking educational planning, supports, accommodations, and modifications to help her achieve equal access to the education environment. *Id.* at PageID.5. The "recommended supports and modifications needed" for Anastasia included sensory integration tools and accommodations, such as a "safe space" accessible to her at all times to reduce stimuli in order to prevent or manage anxiety and sensory overload. *Id.* Plaintiffs allege that defendants discriminated against Anastasia by:

> denying her the opportunity to participate in or benefit from educational opportunities and services; providing her with an opportunity to participate or benefit that was unequal to that provided to others who did not suffer from sensory integration dysfunction, autism spectrum disorder, and emotional impairments; providing a benefit or service that is not as effective as that provided to other students; providing lower quality benefits, services or programs than those provided to others; and/or providing different or separate benefits or services than those provided to others.

*Id.* at PageID.5-6.

Plaintiffs claim that defendants did not comply with their responsibilities under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12203 and 28 C.F.R. §35.134 and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794(a) and 29 C.F.R. § 33.13, "to make accommodations and modifications to address the needs of the Student and other students with disabilities." *Id.* at PageID.6. In addition, "[t]he benefits or services

provided to [Anastasia] were not equally effective as those provided to other students as they did not afford [her] an equal opportunity to obtain the same result, gain the same benefit, or reach the same level of achievement as other students." *Id.* Defendants also used discriminatory policies, practices and procedures which discriminated against students with disabilities or had the effect of "defeating or impairing accomplishment of the objectives of the education program in regard to students with disabilities." *Id.* Defendants also discriminated against Anastasia with policies, practices and procedures "regarding [her] movement in the building and access to accommodations and modifications, as well as regarding discipline for alleged violations of rules resulted in discrimination against [her] and other students with disabilities, subjecting her to punishment for attempting to access accommodations and modifications and then prohibiting access to needed accommodations and modifications during the disciplinary process." *Id.* at PageID.6-7.

Defendants also "engaged in prohibited retaliation and discrimination by mocking, harassing, and punishing [Anastasia] when she attempted to access the agreed upon sensory tools and accommodations and by preventing her from accessing a 'safe space' when needed and as agreed upon." *Id.* at PageID.7. In this regard, Anastasia "was formally disciplined on at least two occasions for attempting to access accommodations and modifications." *Id.*

Plaintiffs alleged that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or rights. *Id.* In this regard, Anastasia "struggled to be present in the school environment," "often ended up having to leave or not attending school at all," and "experienced extreme anxiety, fear, and depression as a result of the hostile environment at Oakridge, leading to increased self-injurious behaviors and suicidal thoughts, ideations, and behaviors." *Id.* Plaintiffs alleged that a causal connection existed between the protected activity and the retaliatory action "based on an unusually suggestive temporal proximity between the

protected activity and the retaliatory action, and/or a pattern of antagonism contemporaneous to the actions which the Langs [the Parents] were taking to secure and enforce [Anastasia's] rights under state and federal law." *Id.*

In ¶¶ 33-37 of their complaint, plaintiffs set forth the actions which they took with respect to defendants:

> 33. Because of the severity of the harassment and discrimination, Plaintiffs removed Student from Oakridge schools during the 2015-16 school years. During that time, Student attended a virtual academy and failed to earn credits needed to advance from grade to grade and toward obtaining a high school diploma.
>
> 34. Plaintiff Student returned to Oakridge schools in the fall of 2016, but continued to experience discrimination and harassment. Plaintiffs filed a civil rights complaint on or about January 17, 2017.
>
> 35. That OCR complaint was resolved on or about October 2, 2017 through a voluntary Resolution Agreement with the District. Plaintiffs did not agree to this resolution, which required the District to convene an IEP team meeting no later than December 15, 2017 to review provision of services and supports and to consider and provide compensatory education not later than February 16, 2018.
>
> 36. Oakridge convened an IEPT meeting as agreed, but did not provide real consideration to services, supports or compensatory education and determined that no compensatory education was due to Student.
>
> 37. As a result of the continued hostility, harassment, denial of access and opportunity, Student left Oakridge in fall of 2017 and enrolled in an adult education program in a neighboring district where she continues to be enrolled and receive education services.

*Id.* at PageID.8.

### C.     Plaintiffs' claims

Plaintiffs' complaint consists of two counts. In Count I, plaintiff Anastasia Lang claims damages for discrimination "Based on disability and denial of equal opportunity and access to appropriate educational services, as guaranteed by Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 and 28 C.F.R. § 35.130 (ADA) and Section 504 of the Rehabilitation Act

of 1973, 29 U.S.C. § 794(a) and 34 C.F.R. § 104 (Section 504)." *Id.* PageID.9 (emphasis omitted).

Specifically, plaintiffs allege that defendants discriminated against Anastasia:

> a. By failing to fully acknowledge and provide appropriate accommodations for Student's sensory and emotional needs;
>
> b. By failing to implement the agreed upon educational plan or to provide services and supports needed; [and]
>
> c. By failing to provide needed accommodations and modifications and preventing Student's equal access and opportunity to benefit from educational benefits and services, including her ability to learn and earn credits toward graduation.

*Id.* at PageID.9.

In Count II, plaintiffs Robert Lang, Susan Lang, and Anastasia Lang claim damages for retaliation in violation of the ADA and the Section 504. *Id.* at PageID.10. In this regard, plaintiffs allege that:

> 46. Because of Plaintiffs' advocacy efforts on behalf of the Student and on their own behalf as her parents and protectors, Defendants engaged in a long-standing campaign of harassment, ridicule, deprivation of services and supports, and a concerted effort to prevent Plaintiffs full knowledge of and participation in planning related to the Student's educational services, supports and placement.
>
> 47. Defendant [sic] would not have taken these adverse actions enumerated more fully above if the Plaintiffs had not continued to access the protections of the state and federal law with respect to the Student's education.
>
> 48. As a direct and proximate result of Defendants' unlawful discrimination and harassment, Plaintiff has sustained injury and damages, including but not limited to lost or delayed educational progress and opportunity, mental and emotional injury and distress, physical harm, lost wages, and expenses related to obtaining mental health services, educational and legal services and supports.

*Id.* at PageID.10.

Plaintiffs seek compensatory and punitive damages, attorney fees, and unspecified equitable relief. *Id.* at PageID.11.

5

### II. Defendants' motion

### A. Legal Standard

In their dispositive motion, defendants seek summary judgment pursuant to Fed. R. Civ. P. 56, and alternatively request the Court to dismiss defendant Oakridge Board of Education pursuant to Fed. R. Civ. P. 12(b)(2) (lack of personal jurisdiction). However, defendants' supporting brief does not include the legal standards applicable to relief under these two court rules; defendants simply conclude with requests that "this Court grant them summary judgment," with an alternative request "that this Court dismiss Defendant Board of Education pursuant to Fed. R. Civ. P. 12(b)(2)." Defendants' Brief (ECF No. 17, PageID.107). Despite defendants' failure to provide the applicable legal standards, the Court will view the motion as one brought for summary judgment under Fed. R. Civ. P. 56 because there is a factual record in the form of an affidavit from Gregory Bodrie (Director of Special Education for defendant District) which provides evidence that plaintiffs did not exhaust their administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*. (ECF No. 17-5).[1]

---

[1] Plaintiffs appear to rely on the "verified complaint" (ECF No. 1) signed by plaintiff Robert Lang. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment). However, plaintiffs' complaint does not have the same force and effect as an affidavit because it is not based upon his "personal knowledge" as required by Fed. Rules Civ. Proc. 56(c)(4), which provides that a declaration used to support or oppose a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Consistent with Fed. Rules Civ. Proc. 56(c)(4) and its predecessor, courts have applied a strict personal knowledge requirement to affidavits or declarations submitted in summary judgment proceedings. *See, e.g., Totman v. Louisville Jefferson County Metro Government*, 391 Fed. Appx. 454, 464 (6th Cir. 2010) (to constitute evidence sufficient to support or oppose a motion for summary judgment, an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated;" thus, a complaint which included a verification stating facts that are true and correct to the best of the affiant's "knowledge and belief" indicated that the allegations of the complaint went beyond the plaintiff's personal knowledge, that the allegations extended to matters within the plaintiff's "beliefs," and that the plaintiff's "beliefs" did not meet the evidentiary standard set forth in Fed. Rules Civ. Proc. 56(e)(1) (predecessor to Fed. Rules Civ. Proc. 56(c)(4)). *See Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002) (the "personal knowledge requirement [of Rule 56] prevents statements in affidavits that are based, in part, 'upon information and belief' - instead of only knowledge - from raising genuine issues of fact sufficient to defeat summary judgment").

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Discussion

#### 1. The Oakridge Board of Education

As an initial matter, defendant Oakridge Board of Education seeks dismissal because it is an entity which cannot be sued. Plaintiffs concur to the extent that the Board should

be dismissed without prejudice. Defendants do not address plaintiffs' concession in their reply brief. Based on plaintiffs' concession, defendant Oakridge Board of Education should be dismissed without prejudice.

### 2. Exhaustion under the IDEA

Defendants seek summary judgment on the ground that plaintiffs failed to exhaust their administrative remedies under the IDEA. The Sixth Circuit addressed the importance of the exhaustion requirement in actions involving the IDEA in *Crocker v. Tennessee Secondary School Athletic Association*, 873 F.2d 933 (6th Cir. 1989):

> The policies underlying this exhaustion requirement are both sound and important. States are given the power to place themselves in compliance with the law, and the incentive to develop a regular system for fairly resolving conflicts under the Act. Federal courts – generalists with no expertise in the educational needs of handicapped students – are given the benefit of expert factfinding by a state agency devoted to this very purpose. Such a mechanism is necessary to give effect to a fundamental policy underlying the [IDEA] "that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education." *Smith v. Robinson*, 468 U.S. 992, 1012, 82 L. Ed. 2d 746, 104 S. Ct. 3457 (1984) [superceded by statute on other grounds]. Were federal courts to set themselves up as the initial arbiters of handicapped children's educational needs before the administrative process is used, they would endanger not only the procedural but also the substantive purposes of the Act.

*Crocker*, 873 F.2d at 935.

While plaintiffs have not alleged an IDEA violation in either Count I or Count II, the statute's exhaustion requirement applies because they raised federal claims related to the alleged denial of Anastasia's "equal access and opportunity to appropriate educational services". Compl. at PageID.2. While plaintiffs' complaint did not seek relief under the IDEA, their allegations clearly establish that Anastasia's situation was covered by that statute:

> 13. The Student's disabilities qualify her as a student with a disability within the meaning of IDEA at *20 USC § 1400, et seq.*, the ADA, and Section 504 of the

> Rehabilitation Act. She has been deemed eligible for IDEA special education services since she was in elementary school and at all times relevant to the allegations in this complaint. The Student was entitled to receive a free and appropriate public education (FAPE) in the least restrictive environment (LRE) from the defendant public school district.
>
> 14. At all times relevant herein, the Parents and Student have been entitled to all rights, entitlements, and procedural safeguards mandated by applicable law and statutes including, but not limited to, the reauthorized IDEA, its implementing regulations promulgated under the Code of Federal Regulations, Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act, State anti-discrimination laws, and controlling Sixth Circuit authority.

*Id.* at PageID.3-4.

As this Court stated in *Richards v. Sturgis*, No. 1:18-cv-358, slip op. (ECF No. 50) (W.D. Mich. Sept. 14, 2018), plaintiffs cannot avoid exhaustion under the IDEA by filing claims under the ADA and the Rehabilitation Act, where the gravamen of the complaint is that the defendant failed to provide a disabled student with the denial of a free and appropriate public education:

> The IDEA "requires states that receive federal funds for education to provide every disabled child who wants it a 'free and appropriate public education' (FAPE)." *L.H. v. Hamilton County Department of Education*, Nos. 17-5989, 18-506, ---F.3d---, 2018 WL 3966517 (6th Cir. Aug. 20, 2018) (citing 20 U.S.C. § 1400 *et seq.*). The IDEA requires exhaustion of administrative procedures "before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) [the] suit 'seeks relief that is also available' under the IDEA. *Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 752 (2017) (quoting 20 U.S.C. § 1415(l)). The IDEA's exhaustion rule "hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education. If a lawsuit charges such a denial, the plaintiff cannot escape [the exhaustion requirement] merely by bringing her suit under a statute other than the IDEA." *Id*. at 754. If the plaintiff seeks a remedy under a different statute – that is, if he or she "seek[s] redress for . . . other harms, independent of any FAPE denial," the IDEA's exhaustion rule does not apply. *Id*. To determine whether a plaintiff is seeking relief for the denial of a FAPE, the Court should focus on "the crux – or in legal-speak, the gravamen – of the plaintiff's complaint…." *Id*. The Court must "examine whether a plaintiff's complaint – the principal instrument by which she describes her case – seeks relief for the denial of a public education," focusing on substance over form. *Id*. at 755.

The Supreme Court details two hypotheticals to consider in determining whether the gravamen of a plaintiff's complaint concerns the denial of a FAPE:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school – say, a public theater or library? And second, could an adult at the school – say an employee or visitor – have pressed essentially the same grievance? . . . [W]hen the answer is no, then the complaint probably does concern a FAPE. . . ."

*Id*. at 756. Another clue that the gravamen of the complaint is the denial of a FAPE appears when a plaintiff invokes the IDEA's administrative procedures before filing suit. *Id*.

The Court readily finds that under *Fry*, Plaintiff's case hinges on the alleged denial of a FAPE. Plaintiff's complaint refers repeatedly to the alleged inadequacy of the education he received from 2004 through early 2016. His claim under the ADA alleges explicitly that "the defendants "intentionally discriminated against [Plaintiff] in violation of Title II by acting in bad faith and with gross misjudgment in failing to provide a FAPE and concealing this failure from [Plaintiff] and his family." (ECF No. 26, PageID.150.)  His claim under the Rehabilitation Act uses the same language. (*Id.*, PageID.149.) The answer to each of the *Fry* hypotheticals is no.  Plaintiff could not have brought essentially the same claim if the alleged conduct had occurred at a different kind of public facility. Nor could an adult at the school have pressed essentially the same grievance. Plaintiff is already pursuing exhaustion of the IDEA's procedures, another indication that the denial of the FAPE is at the heart of the complaint.

Plaintiff contends that even if the *Fry* factors call for dismissal of the case based on lack of exhaustion, the Court should simply stay the case until the administrative process is complete.  That is not what *Fry* mandates. To the contrary, *Fry* speaks of exhausting the process before a suit is filed at all. 137 S. Ct. at 752. Moreover, this holding is based on the text of the applicable statute:

> Nothing in this chapter [of the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the proceedings under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

> Plaintiff offers no persuasive authority for the Court to skirt the language of the statute and the holding of *Fry* simply so the case can stay in suspended animation on the docket while the administrative process unfolds. It appears the real reason driving the request is Plaintiff's concern that some claims may be lost to a statute of limitations defense. As to any state law claims, the Plaintiff can protect himself by promptly filing in the state court. As to any federal claim, the short answer is that the statute and *Fry* require exhaustion before filing suit. If that rule has statute of limitations consequences – something the Court is **NOT** deciding at this time – then that is the result the law requires, and not a basis to ignore the rule.

*Richards*, No. 1:18-cv-358, slip op. (ECF No. 50, PageID.381-383) (emphasis in original).

### 3. Discrimination claim (Count I)

As in *Richards*, the gravamen of Anastasia's discrimination claims under the ADA and Section 504 is that defendants denied her a FAPE by failing to provide her with a number of accommodations directly related to her education as a student enrolled in the District. Here, the record reflects that plaintiffs did not exhaust this claim under the IDEA. Because this lawsuit involves the alleged denial of a FAPE, plaintiff cannot escape the exhaustion requirement "merely by bringing [her] suit under a statute other than the IDEA.'" *Richards*, slip op. at PageID.381, quoting *Fry*, 137 S. Ct. at 754.

To the extent that plaintiffs contend that exhaustion is futile because they seek monetary damages, their claim fails. "The federal courts require a plaintiff to exhaust IDEA remedies as a prerequisite to bringing claims under another federal statute where a student's injury could be redressed 'to any degree' by the IDEA's administrative procedures." *B.H. v. Portage Public School Board of Education*, No. 1:08-cv-293, 2009 WL 277051 at *9 (W.D. Mich. Feb. 2, 2009) (citing *Kutasi v. Las Virgenes Unified Sch. Dist.*, 494 F.3d 1162, 1168 (9th Cir. 2007)). "[T]he mere fact that a plaintiff seeks an award of damages that may be unavailable in IDEA

administrative proceedings is irrelevant." *B.H.*, 2009 WL 277051 at *9. As the Sixth Circuit stated in *S.E. v. Grant County Board of Education*, 544 F.3d 633 (6th Cir. 2008):

> We disagree that the plaintiff's damages claim alone excuses her from exhausting her administrative remedies. Although the Sixth Circuit has not decided the question, most courts have held that a plaintiff seeking money damages is required to exhaust administrative remedies under the IDEA, even if money damages are not available under the IDEA or through the administrative process.

*Grant County Board of Education*, 544 F.3d at 642 (*quoting Covington v. Knox County School System*, 205 F.3d 912, 916 (6th Cir. 2000). For these reasons, defendants' motion for summary judgment should be granted as to Anastasia Lang's discrimination claim.

### 4. Retaliation claim (Count II)

#### a. Plaintiff Anastasia Lang

Next, defendants contend that Anastasia's retaliation claim should be dismissed. Defendants rely on *Rose v. Yeaw*, 214 F.3d. 206 (1st Cir. 2000). In *Rose*, the plaintiffs claimed that the defendant school department engaged in a number of wrongful acts, which included failing to accommodate the student's asthma, conditioning the student's placement at the high school based upon consent to a psychological examination, retaliating against the student "in response to [his parents'] efforts to enforce his educational rights," and generally failing to implement his plan. *Rose*, 214 F.3d at 210. The court concluded that the IDEA's exhaustion requirement applied to a student's claim that the school department retaliated against the student because of his parent's educational advocacy:

> These complaints relate unmistakably to the evaluation and educational placement of [the student], in the Coventry school system and to the provision of a free appropriate education there. Absent some exception, these claims are subject to the IDEA exhaustion requirement.

*Id.* As discussed, the gravamen of Anastasia's claims in this case is educational in nature. Because the IDEA exhaustion requirement applies to Anastasia's retaliation claim, defendants' motion for summary judgment should be granted as to that claim.

### b.     Robert and Susan Lang

Finally, plaintiffs Robert and Susan Lang's retaliation claims are subject to the IDEA's exhaustion requirements because their retaliation claims are derivative from their status as Anastasia's educational advocates. "The IDEA affords parents of a disabled child the opportunity to present a complaint 'with respect to *any* matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child. . . .' 20 U.S.C. § 1415(b)(6)(A) (emphasis added)." *Batchelor v. Rose Tree Media School District*, 759 F.3d 266, 274 (3d Cir. 2014). *See Z.G. by and through C.G. v. Pamlico County Public Schools Board of Education*, 744 Fed. Appx. 769, 779 (4th Cir. 2018) (where plaintiffs' retaliation claim under the ADA and the Rehabilitation Act arise directly from the parents' advocacy for the student's educational rights, "the retaliation claim is grounded on the school's failure to provide a FAPE, and the plaintiffs were required to exhaust the IDEA's administrative process before bringing that claim"). Here, as in *Batchelor* and *Pamlico County Public Schools*, Robert and Susan Lang's retaliation claims arose from their advocacy for Anastasia's education rights at the Oakridge Public Schools. For these reasons, defendants' motion for summary judgment should be granted as to Robert and Susan Lang's retaliation claim.

### IV.    RECOMMENDATION

Accordingly, I respectfully recommend that defendants' motion for summary judgment (ECF No. 16) be **GRANTED** and that this action be **TERMINATED**.

In the alternative, I further recommend that defendant Oakridge Board of Education be dismissed pursuant to plaintiffs' concurrence.

Dated:  September 27, 2019              /s/ Ray Kent
                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).